1  Nevin P. Miller, Esq. (SBN 233202)
Hudson Martin, PC
2  26515 Carmel Rancho Blvd., Suite 200
Carmel, CA 93923
3  831-375-3151
nmiller@hudsonmartin.com
4  Attorney for Plaintiff, David Bernahl

5              UNITED STATES DISTRICT COURT

6              NORTHERN DISTRICT OF CALIFORNIA

7

8  DAVID BERNAHL, an individual,                    Case No. 5:23-cv-411

9                              Plaintiff

10         v.                                        **COMPLAINT FOR**

11  EVERSHEDS SUTHERLAND LIMITED;           **1.  Abuse of Process**
    EVERSHEDS SUTHERLAND
12  (INTERNATIONAL) LLP, a limited liability   **2.  Invasion of Privacy**
    partnership, registered in England and Wales;
13  EVERSHEDS SUTHERLAND (EUROPE)           **3.  Declaratory Relief**
    LIMITED; EVERSHEDS SUTHERLAND
14  BITĀNS dba Eversheds Bitans Law Office;    **4.  Intentional Infliction of Emotional**
    EVERSHEDS SUTHERLAND (US) LLP, a                **Distress**
15  limited liability partnership organized under
    the laws of Georgia; ASHBY LAW FIRM
16  P.C., a professional corporation organized   **(DEMAND FOR JURY TRIAL)**
    under the laws of California; IAN S.
17  SHELTON, an individual; JOSEPH R.
    ASHBY, an individual; SARAH E. PAUL, an
18  individual; and DOES 1-100.
                                Defendants
19

20

21

22

23

24

25

26

27

28

                                    1
                    COMPLAINT AND DEMAND FOR JURY TRIAL

**OVERVIEW**

This action concerns an orchestrated effort by the defendant law firms and attorneys to simultaneously process across multiple jurisdictions eleven (11) separate civil subpoenas *duces tecum* on an *ex parte* basis to obtain private and confidential information of Plaintiff, David Bernahl, for use in a highly publicized European domestic squabble to which he is not a party.

In all eleven (11) subpoena instances, defendant law firms and attorneys intentionally deprived Plaintiff of his due process rights of notice and opportunity to be heard as required by the U.S. Constitution and as embedded in the Federal Rules of Civil Procedure and/or applicable local court rules, resulting in the Plaintiff's foreseeable humiliation, intimidation and fear for his personal safety and that of his family, as alleged herein.

**PARTIES**

1.      Plaintiff, David Bernahl ("**Plaintiff**"), is a U.S. citizen whose domicile and residence is and always has been within the state of California.

2.      Defendant Ashby Law Firm P.C. is, and at all times mentioned herein was, a professional corporation organized under the laws of California.

3.      Defendant Ian Shelton is, and at all times mentioned herein was, an attorney duly licensed to practice his profession in the State of California.

4.      Defendant Joseph R. Ashby is, and at all times mentioned herein was, an attorney duly licensed to practice his profession in the State of California.

5.      Defendant Sarah E. Paul is, and at all times mentioned herein was, an attorney duly licensed to practice her profession in the State of New York.

6.      "Eversheds Sutherland" is the name brand of an international law firm that controls, manages and directs affiliated global law firms and attorneys to provide legal and or other services to clients around the world (collectively referred to herein as "**Eversheds**

**Sutherland**").

7.      In addition to the Defendant individual attorneys named above, the following Eversheds Sutherland entities are individually named Defendants, as follows:

8.      Defendant Eversheds Sutherland Limited is, and at all times mentioned herein was, a company registered in and located in England and Wales.

9.      Defendant Eversheds Sutherland (International) LLP is, and at all times mentioned herein was, a limited liability partnership, registered and located in England and Wales.

10.      Defendant Eversheds Sutherland (Europe) Limited is, and at all times mentioned herein was, a limited liability partnership, registered in and located in London, England.

11.      Eversheds Sutherland Bitans dba Eversheds Bitans Law Office is a Member of Eversheds Sutherland (Europe) Limited, registered and located in Latvia.

12.      Eversheds Sutherland (US) LLP is, and at all times mentioned herein was, a limited liability partnership organized under the laws of the State of Georgia, licensed to do business in the State of California, actively carrying on business in the State of California. (Defendants and each of them are collectively referred to hereinafter as "**Defendants**").

13.      Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1–100, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by such Defendants.

14.      Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein mentioned, that each of the above-named Defendants was and is the agent, employee, principal, or employer of each of the remaining Defendants, and/or vice versa. In addition,

Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein mentioned, that the Defendants named hereinabove, and each of them, are responsible in some manner for the occurrences herein alleged, and that each of the above-named Defendants collaborated with, and/or aided and/or abetted each of the remaining Defendants in committing the acts herein alleged.

15.    Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein mentioned, Defendants, and each of them, were the knowing agents and/or alter egos of one another, and that Defendants directed, ratified, and/or approved the conduct of each of the other Defendants, and each of their agents or employees, and are therefore vicariously liable for the acts and omissions of their co-Defendants, their agents and employees, as more fully alleged herein.

## JURISDICTION AND VENUE

16.    The subject matter jurisdiction of this Court is appropriate under 28 U.S.C. § 1331 upon allegations that Defendants intentionally violated the U.S. Constitution and federal laws. The subject matter jurisdiction of this Court is appropriate under 28 U.S.C. § 1332 upon allegations of diversity of citizenship of the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

17.    Venue is proper as a substantial part of the events were directed and happened in this district and Plaintiff resides in this district.

18.    The personal jurisdiction of this Court over Defendants, and each of them, is predicated upon Defendants and each of them having (i) systematic and continuous contacts with this jurisdiction, (ii) having purposefully availed themselves by submitting papers and filings within this court and/or (iii) having purposefully availed themselves by collaboratively designing, preparing, filing the identical *Ex Parte* Applications in three federal district courts with the collective intent of depriving the Plaintiff of due process in this jurisdiction; and (iv) the

Defendants conduct would subject them to a court of general jurisdiction in the state of California on the state law claims. Furthermore, the interests are balanced because Defendants and each of them are sophisticated parties that are members or associates of a global law firm and Plaintiff is a single individual entitled to convenient and effective relief. Finally, hearing the matter within this court comports with notions of judicial economy as the majority of subpoenas served without due process were accomplished within this jurisdiction.

## INTRADISTRICT ASSIGNMENT

19.     Because this lawsuit arose in Monterey County, it should be properly assigned to the San Jose Division of this Court.

## STATEMENT OF FACTS

20.     In or around early 2017, Santa Zamuele, now known as Santa Bernahl ("**Santa**"), became aware that her ex-husband, Olegs Fils ("**Olegs**"), and his bank, ABLV Bank, had come under intense international criminal scrutiny for alleged improper business dealings, the details of which were unclear to her; however, the stress began to markedly deteriorate her marital relationship and Olegs and Santa separated.

21.     In February 2018, the United States Financial Crimes Network published that ABLV Bank was being "*used to facilitate money laundering, illicit financial schemes and other illicit activity conducted by its customers and other illicit actors, including actors associated with transnational organized crime, North Korea's procurement or export of ballistic missiles, sanctions evasion, and large-scale corruption*" (*See* Federal Register, Vol. 83, No. 33, February 16, 2018, at 6990, a true and correct copy of which is attached hereto as **Exhibit "A"**); and had "*reasonable grounds to believe that ABLV executives, shareholders and employees have institutionalized money laundering as a pillar of the banks business practices.* (*Id*. at 6987). As the largest single shareholder of ABLV Bank (*Id*. at 6988), Olegs came under intense pressure and

scrutiny, the marital relationship became untenable, and Santa filed for divorce and commenced building a new life for herself and her two girls.

Marital Dissolution and Escape

22.     On March 29, 2018, Santa obtained a divorce by decree from the Latvian courts. After the divorce, Santa felt subjected to stalking, harassment and intimidation from Olegs. Given Olegs ties with alleged criminal elements and increasingly aggressive behavior, Santa began to fear for her personal safety and that of her young daughters. In April 2018, Santa made the painful decision to leave the only life she knew and flee with her daughters and that which she could carry to start a new life in California.

23.     After her divorce and move to California, Santa married Plaintiff, David Bernahl, and moved into his residence and endeavored to start a new life for herself and her young daughters away from the fear and intimidation they had known in Latvia.

Harassment and the "Ungrateful Spouse Proceeding"

24.     Once Olegs learned that Santa had married Plaintiff, Olegs launched an intensive and negative social media and European publicity barrage on Santa's and David's personal life, including publicly in social media and in magazine articles revealing Plaintiff's finances and his whereabouts with and without Santa and generally thrusting Plaintiff into a highly public and negative light.

25.     Over the next three years, Olegs' campaign continued, including ongoing publicity "hit" pieces, the filing of a Latvian criminal complaint against Santa which was later dismissed for lack of cause, foreclosing on loans made to Santa's business, placing liens on her elderly parent's home in Latvia, following her childrens' social media accounts, having Santa followed and intimidating Santa's employees in Latvia, all purposefully designed to cause Plaintiff, Santa and Santa's two girls sustained stress, anguish, fear and anxiety.

COMPLAINT AND DEMAND FOR JURY TRIAL

26.     On or about June 3, 2021, Olegs commenced a Latvian civil action to obtain a determination under an arcane Latvian legal principle, that Santa was an "ungrateful spouse" and must return assets she enjoyed during their marriage, particularly jewelry, upon allegations she had engaged in an extra-marital affair with Plaintiff, allegedly evidenced by a few innocuous social media postings ("**Ungrateful Spouse Proceeding**"). (See a true and correct copy of an authorized translation of the Ungrateful Spouse Proceeding attached hereto and incorporated herein as **Exhibit "B"**).

<u>Orchestration of the U.S. Subpoena Plan</u>

27.     In September 2020, Defendants, and each of them, on behalf of their client Olegs, orchestrated a plan pursuant to 28 U.S.C. § 1782 to use their position as instrumentalities of the court to obtain and serve in the United States a battery of e*x parte* subpoenas *duces tecum* upon non-party goods and services providers seeking evidence to prove Olegs' extra-marital affair theory undergirding the Ungrateful Spouse Proceeding.

28.     In October 2020, Defendants' subpoena plan commenced. Eversheds Sutherland's office in Los Angeles, through their attorney Ian Shelton, filed an *Ex Parte* Application in the United States District Court of Central California, Case No. 2-20-mc-00126. (See a true and correct copy the Central District of California *Ex Parte* Applications attached hereto and incorporated herein as **Exhibits "C")**. Eversheds Sutherland office in New York, through their attorney Sarah Paul, filed an <u>identical</u> *Ex Parte* Application in the United States District Court of Southern New York, Case No. 1-20-mc-00313. (See a true and correct copy the Southern District of New York *Ex Parte* Applications attached hereto and incorporated herein as **Exhibits "D"**). Sutherland, through associated counsel in San Francisco, Joseph Ashby of Ashby Law Firm P.C., filed an <u>identical</u> *Ex Parte* Application in the United States District Court of Northern California, Case No. 5-20-mc-80176. (See a true and correct copy the Northern District of California *Ex Parte*

7

Applications attached hereto and incorporated herein as **Exhibits "E"**).

29.     In total, eleven (11) separate *ex parte* subpoenas were requested, to wit: two (2) in the Southern District of New York, two (2) in the Central District of California and seven (7) in the Northern District of California, to be served upon non-party enterprises that provide hospitality, transportation and wine-related goods or services. (See a true and correct copy the referenced subpoenas *duces tecum* attached hereto and incorporated herein as Exhibits C:6-1, 6-2; D:1-2, 1-3, and E:9-1").

30.     The scope of discovery sought under Defendant's subpoena barrage was expansive and intrusive, including documents such as itineraries, reservations, registration documents (e.g., by implication seeking passports and government identification), vehicle registrations, purchase receipts, payment account details (such as Plaintiff's credit card and financial account information) as well as photographs, video recordings and sound recordings of Plaintiff, a non-party to the Ungrateful Spouse Proceeding in Latvia.

31.     All *Ex Parte* moving papers and declarations in support of subpoenas were identical across all jurisdictions and the subpoena effort was designed, coordinated and executed according to a sophisticated, well considered, well-orchestrated and ultimately successful plan. All eleven (11) subpoenas *duces tecum* were served without notice to Plaintiff, Santa or representative counsel, notwithstanding the fact Defendants knew they resided in this judicial district of California.

32.     Plaintiff David Bernahl, a non-party to the Ungrateful Spouse Proceedings in Latvia, whose personal, financial and consumer records were the express subject of Defendants' subpoena barrage, and whose residence and domicile in California was known to Defendants was not provided notice of a single subpoena. Further, Plaintiff's wife, Santa Bernahl, who is a party to the Ungrateful Spouse Proceeding, whose residence and domicile in this jurisdiction of California

1   was known to Defendants, was not provided notice of a single subpoena.

2   <u>Eversheds Sutherlands' Refusal to Give Notice of Subpoenas</u>

3   33.   Defendant Eversheds Sutherland, as an internationally renowned law firm, and the

4 attorneys that work for them, all officers of the court and well versed in serving as

5 instrumentalities in the promotion of justice, are clearly aware and experienced in the federal rules

6 and federal procedures in civil actions. Defendant law firms and attorneys appropriately applied by

7 *ex parte* application under 28 U.S.C. § 1782 to obtain subpoenas for US entities for use in a

8 foreign tribunal. Inexplicably, they made a conscious decision not to give notice to Plaintiff or to

9 his wife Santa, whose residence in this judicial district was known to them.

10

11   34.   As both Federal Rules of Civil Procedure and extensive case law make clear, once

12 the *ex parte* application pursuant to 28 U.S.C. § 1782 is granted by the court, the subpoenas must

13 be processed in accordance with federal rules, which requires notice under due process

14 considerations. See *Government of Ghana v. ProEnergy Services, LLC,* 677 F.3d 340 (8th Cir.

15 2012) (allowing federal courts pursuant to § 1782 to provide assistance in gathering evidence for

16 use in foreign tribunals does not establish a standard for discovery; instead, it provides for a

17 threshold determination of whether to allow foreign litigants to enjoy discovery in United States

18 courts in accordance with federal rules); see also *In re Rivada Networks*, 230 F. Supp.3d 467 (E.

19 D. Va. 2017) (after grant of *Ex Parte* Application for permission to serve deposition and document

20 subpoenas on a witness for use in a potential civil lawsuit in Mexico required discovery to be

21 consistent with Federal Rules of Civil Procedure).

22

23   35.   The consideration of § 1782 factors in *ex parte* applications do not take into

24 consideration any potential claims of personal right or privilege to the documents sought that the

25 adverse party may have, as those are left for the adverse party to bring in a motion to quash. See

26 e.g., *In re Letter of Request from Supreme Court of Hong Kong*, 138 F.R.D. 27, 32 n.6 (S.D.N.Y.

27

28

9
COMPLAINT AND DEMAND FOR JURY TRIAL

1991) ([E]x parte applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it); See e.g., *In re Ex Parte Application of Kleimar N.V*., 220 F. Supp. 3d 517, 520-22 (S.D.N.Y. 2016) (court initially granted § 1782 application on ex parte basis, then permitted respondent to dispute applicability of § 1782 factors in motion to quash); *IPCom GMBH & Co. KG v. Apple Inc.,* 61 F. Supp. 3d 919, 921-23 (N.D. Cal. 2014) (same); *Pott v. Icicle Seafoods, Inc.,* 945 F. Supp. 2d 1197, 1198-200 (W.D. Wash. 2013) (same). See also *Khrapunov v. Prosyankin*, 931 F.3d 922, 924 (9th Cir. 2019) (magistrate judge initially granted § 1782 application without adversarial briefing, then allowed recipients to file motion to quash and eventually narrowed subpoena's scope).

36.     Rule 45 states: "If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." (Fed. R. Civ. P. 45(a)(4)). "The purpose of such notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand [...]" (See Fed. R. Civ. P. 45, *Notes on Advisory Committee Rules – 1991*).

37.     The term "prior notice," for purposes of subpoenas, means notice prior to service of subpoena on the non-party, rather than prior to document production. *Coleman-Hill v. Governor Mifflin School Dist*., 271 F.R.D. 549 (E. D. Pa. 2010). Where an attorney issues a subpoena to a third party, but does not give proper notice to adverse parties, such conduct violates the Civil Rules. *C&F Packing Co. v. Doskocil Cos.,* 126 F.R.D 662, 678 (N. D. Ill. 1989). Subpoenas issued to non-parties were void and unenforceable, where counsel did not give prior notice to defendant by serving opposing counsel with the subpoenas. *Florida Media, Inc. v. World Publications, LLC,* 236 F.R.D. 693 (M. D. Fla. 2006). (In this case, Plaintiff's counsel used his

authority as an officer of this Court to issue subpoenas to approximately 80 non-parties. Plaintiff was obligated to give prior notice to Defendant by serving opposing counsel with the subpoenas. He failed to do so, and his subpoenas are void and unenforceable).

38.    While defendant law firms and their attorneys have claimed that they were under no duty or requirement to provide Plaintiff, a non-party to the Ungrateful Spouse Proceeding notice of the subpoenas, they have made the same claims as to Santa, who is a party to the Ungrateful Spouse Proceedings. Defendants, and each of them, knew Plaintiff and Santa's shared residence in this judicial district of California, knew Santa was an adverse party in the Ungrateful Spouse Proceeding, and knew Santa had a pecuniary interest in the granting and service of these subpoenas (also leaving her off the local rule required "Interested Parties" forms). (See a true and correct copy of the Certification and Notice of Interested Parties form attached hereto and incorporated herein as Exhibits D:71-74).

39.    Under no reading of the Federal Laws, Federal Rules of Civil Procedure or case law can Defendants claim that Santa was not an adverse party, despite their coordinated effort to file the *Ex Parte* Applications without using her name. In addition, the way the *Ex Parte* Application, Declarations and the subpoenas themselves referenced Plaintiff, it was apparent they viewed him as a potential adverse party as well. Defendants speak out of both sides of their mouths, but the implacable question remains, what harm did Defendants avoid by not providing proper notice?

40.    With the combined experience and knowledge of Defendants, and each of them, it is inconceivable they were unaware that they had a duty to serve notice of the subpoenas on Santa as an adverse party. Of note, attorney Sarah E. Paul spent nine years as Assistant U.S. Attorney in the Southern District of New York and as a federal prosecutor handled multinational cases such as investigations into Cayman Island investment brokers, the Panama Papers Leak, and the Swiss

Bank. Defendant Eversheds Sutherland and attorney Sarah E. Paul filed the first identical *Ex Parte* Application and Declarations in New York. It is inconceivable that as a veteran officer of the court she did not consider Plaintiff or Santa's obvious due process rights to notice. (Plaintiff, on information and belief, alleges that Eversheds Sutherland and Sarah E. Paul originated and sent the documents either in hardcopy or electronically to counterparts in California to be filed in the Central and Northern District of California).

41.    While Defendants' intention was to specifically deprive Plaintiff of the opportunity to object to the subpoena or its scope so Plaintiffs private information could flow to Latvia, Defendants, and each of them, also had more pernicious motives. Defendants' ulterior motive was to join their billionaire client in communicating to Plaintiff and his family that with Eversheds Sutherland's representation, Olegs was above the law and common notions of fair play and substantial justice that undergird the U.S. legal system.

42.    In this country no person, no matter how wealthy, is above the law, and no person, no matter how powerless or vulnerable, can be deprived of the law's protections. None should be more respectful and obedient to that principle than those attorneys who serve its ends. To brush off Defendants' failure to serve subpoenas as trivial misses the gravitas of the implication, and begs the uncomfortable question, in what other cases before the United States judiciary have Defendants', as instrumentalities of the court, so unabashedly trampled the integrity of Constitutional due process rights?

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### (Abuse of Process- Against ALL DEFENDANTS)

43.    Plaintiff hereby incorporates by reference all prior paragraphs of this complaint, and makes said paragraphs a part of this, the first cause of action, as though fully set forth herein.

44.     Eversheds Sutherland sought *Ex Parte* Orders to serve subpoenas on companies in the United States related to the Ungrateful Spouse Proceeding. In the Ungrateful Spouse Proceeding Olegs is the Claimant and Santa is the defendant. Plaintiff is not a party to the Ungrateful Spouse Proceeding, nor any civil or criminal action with Olegs.

45.     On September 2, 2020, Olegs and his attorneys Eversheds Sutherland (US), LLP and Sarah Paul filed an *Ex Parte* Application for the Issuances of Subpoenas Duces Tecum Pursuant to 28 U.S.C. § 1782 to two (2) businesses within the jurisdiction of New York Southern District Court, Zip Aviation and 336 Liquor Store, Inc. d/b/a Crush Wine & Spirits. On September 23, 2020, Olegs and his attorneys Eversheds Sutherland (US), LLP and Ian Shelton filed an *Ex Parte* Application for the Issuances of Subpoenas Duces Tecum Pursuant to 28 U.S.C. § 1782 to two (2) businesses within the jurisdiction of California's Central District Court, Ocean Avenue, LLC and 35 State Street Hotel Partners, LLC.  On October 5, 2020, Olegs and his attorneys Ashby Law Firm P.C. and Joseph Ashby filed an *Ex Parte* Application for the Issuances of Subpoenas Duces Tecum Pursuant to 28 U.S.C. § 1782 to seven (7) businesses within the jurisdiction of California Northern District Court, Specialized Helicopters, Inc.; Hyatt Corporation, Hyatt Carmel Highlands, Burst + Bloom, SommPicks, LLC, Benchmark Wine Group, Inc., and Belmont Wine Exchange, LLC.  Both Olegs and his attorney Agris Bitans submitted Declarations in support of the *Ex Parte* Applications. The only substantial difference between the filings was the subpoenas to be issued. In total eleven subpoenas were requested, two in Southern New York, two in Central California and seven in Northern California.

46.     Shortly after the *ex parte* subpoenas were issued under 28 U.S.C. § 1782, Defendants, and each of them, in violation of Fed. R. Civ. P. 45, served the respective subpoenas on the third-party businesses without notice to Plaintiff or his wife Santa (or her attorney of record or Plaintiff), whose domicile and residence in this judicial district of California were well known

to Defendants, and each of them.

47.     Plaintiff became aware that the *ex parte* subpoenas had been issued without notice on or around June 3, 2021, when Olegs filed a Supplemental Application regarding submission of written evidence in the Ungrateful Spouse Proceeding. (See a true and correct copy of the translated Supplemental Application attached hereto and incorporated herein as **Exhibit "F"**).

48.     Under Fed. R. Civ. P. 45, Defendants were required to serve a copy of the eleven subpoenas on Plaintiff because, as Defendants aver, Plaintiff is to be treated as an adverse party, or a potential adverse party. The subpoenas sought Plaintiff's personal, financial and consumer information (which were delivered Defendants' Latvian counsel unredacted as to Plaintiff's highly sensitive information including financial account numbers and the faces of his minor children from a previous marriage, as required by local rules), and the subpoenas requested information related to his travel plans, passengers he traveled with, hotels he stayed at, tours or other activities he took, his financial records and receipts, identifying information including his driver's license, and photos, video, or sound recordings of Plaintiff, and items he received at his personal residence.

49.     Defendants, and each of them, misused 28 U.S.C. § 1782 by not giving Plaintiff notice under Fed. R. Civ. P. 45 at any time, let alone prior to serving the subpoenas to non-party respondents, violating Plaintiff's due process rights. Further, had Defendants, and each of them, properly given notice of the subpoenas on Santa, a party to the Ungrateful Spouse Proceedings in Latvia who was known by Defendants to be residing within the judicial district, and/or Plaintiff, Plaintiff would have had the opportunity to challenge the subpoenas and/or limit the scope and ensure redaction of highly sensitive information for the safety and security of his family.

50.     The purpose and motivation of Defendants in purposefully misusing the legal process in the above-described manner was not just to give Olegs information he could and did

deliberately use in the Ungrateful Spouse Proceeding. There was also a concerted and collective ulterior motive to provide Olegs private non-party information Olegs could use and did use to harm Plaintiff's business reputation and ultimately, to intimidate and show Plaintiff that he was weak, vulnerable and not protected by U.S. laws. And further, the silent but more pernicious purpose of Defendants' conduct is to communicate to Plaintiff that Olegs, with Defendants overzealous representation is more powerful and above the common notions of fair play and substantial justice that undergird the U.S. legal system.

51.     As a proximate result of the actions of Defendants, Plaintiff has been damaged generally.

52.     At all times mentioned herein, Defendants, and each of them, acted willfully with the wrongful intention of injuring Plaintiff and from an improper or evil motive amounting to malice.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

1.  For general damages according to proof.

2.  For damages for mental and emotional distress according to proof.

3.  For punitive damages.

4.  For costs of suit herein incurred.

5.  For such other and further relief as the court may deem proper.

## SECOND CAUSE OF ACTION

### (Invasion of Privacy – Against ALL DEFENDANTS)

53.     Plaintiff hereby incorporates by reference all prior paragraphs of this complaint, and makes said paragraphs a part of this, the second cause of action, as though fully set forth herein.

54.     Defendants, and each of them, without Plaintiff's consent, invaded Plaintiff's right

to privacy by subpoenaing documents which intruded on Plaintiff's solitude or private affairs, including requesting any type of visual image, sound recording, or other physical impression of Plaintiff while engaging in a private, personal, or familial activity; requesting Plaintiff's driver's license or other personal identification information; identification of associates of Plaintiff; information on Plaintiff's sexual matters; and confidential financial affairs.

55.     The intrusion was offensive and objectionable to Plaintiff and to a reasonable person of ordinary sensibilities. Plaintiff is not a party to the Ungrateful Spouse Proceedings and as such, there is no relevance to obtaining information related to his travel plans, passengers he traveled with, hotels he stayed at, tours or other activities he took, Plaintiff's financial records and receipts, identifying information, and photos, video, or sound recordings of Plaintiff, or any items he received at his personal residence.

56.     The intrusion was into matters, places or things which were highly private and entitled to be private.

57.     As a proximate result of the above disclosure, Plaintiff was exposed to contempt and ridicule, and suffered loss of reputation and standing in the community, all of which caused him humiliation, embarrassment, hurt feelings, mental anguish, and suffering, all to his general damage in an amount according to proof.

58.     As a further proximate result of the above-mentioned disclosure, Plaintiff has suffered injury to his business, in that he has lost business partners and business opportunities, all to his special damage in an amount according to proof.

59.     In taking the action described above, Defendants, and each of them, were guilty of oppression, fraud, or malice, in that Defendants took the action with the intent to vex, injure, or annoy Plaintiff or a willful and conscious disregard of his rights. Plaintiff therefore seeks an award of punitive damages.

60.     Given the high publicity of the Ungrateful Spouse Proceeding subject matter, Defendants, and each of them, knew or had reason to know that their client Olegs' publication of materials obtained by the subpoenas would cause the Plaintiff great and irreparable injury in that Plaintiff would and did suffer continued humiliation, embarrassment, hurt feelings, and mental anguish. Knowing Olegs is outside the jurisdiction of the United States, Defendants and each of them knew Plaintiff would have no adequate remedy at equity or law for the injuries being suffered. Plaintiff therefore asks the court to consider these facts as an amplifying factor for any award of damages hereunder.

WHEREFORE, Plaintiff prays judgment against defendant as follows:

1.  For general damages according to proof;

2.  For special damages according to proof;

3.  For exemplary or punitive damages;

4. For costs of suit herein incurred; and

5. For such other further relief as the court may deem proper.

### THIRD CAUSE OF ACTION

### (Declaratory Relief – Against ALL DEFENDANTS)

61.     Plaintiff hereby incorporates by reference all prior paragraphs of this complaint, and makes said paragraphs a part of this, the third cause of action, as though fully set forth herein.

62.     An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties in that Plaintiff contends Defendants, and each of them, where required to serve Santa Bernahl and/or Plaintiff the respective subpoenas before serving them on the third-party entities as required under Federal Rules of Civil Procedure. Therefore, the subpoenas are null and void.

63.     Defendants, and each of them, dispute this contention and claim that the Federal

17

Rules of Civil Procedure do not require Santa and/or Plaintiff to be given notice of the respective subpoenas at all.

64.    Plaintiff desires a judicial determination of his rights and duties, and a declaration as to whether the Federal Rules of Civil Procedure required Defendants, and each of them, to serve Santa and/or Plaintiff the respective subpoenas and whether such notice is required before serving the subpoenas on the third-party entities.

65.    A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain his rights and duties. Declaratory Relief would have the practical effect of allowing Plaintiff to seek recall of any and all documents obtained under the subpoenas as relates to him from public disclosure, including the Ungrateful Spouse Proceeding. In addition, the Declaratory relief would modify defendant's procedures and ensure that future subpoenas issued by them follow the requirement of the Federal Rules of Civil Procedure.

WHEREFORE, Plaintiff prays judgment as follows:

1. For a declaration that the Subpoenas issued in the above referenced federal district courts are null and void and of no force and effect.

2. For a declaration that the Federal Rules of Civil Procedure 45 required Defendants, and each of them, to serve adverse parties, including Santa Bernahl and/or Plaintiff the respective subpoena before service on the third-party entities.

3. For costs of suit herein incurred; and

4. For such other and further relief as the court may deem proper.

**FOURTH CAUSE OF ACTION**

**(Intentional Infliction of Emotional Distress – Against ALL DEFENDANTS)**

66.    Plaintiff hereby incorporates by reference all prior paragraphs of this complaint,

18

COMPLAINT AND DEMAND FOR JURY TRIAL

and makes said paragraphs a part of this, the fourth cause of action, as though fully set forth herein.

67.     As alleged herein, the Defendants, and each of them, as instrumentalities of the court, engaged in a series of acts with the intention of manipulating the court and the U.S. legal system to obtain Plaintiff's highly personal and sensitive information on behalf of their client and they were successful in doing so.

68.     By virtue of the Defendants, and each of them, as instrumentalities of the court, collection of such personal and highly confidential private information through *ex parte* subpoenas processed without notice to Plaintiff, and delivery to Olegs, the Plaintiff, his family, and his businesses are all exposed to the use of such information by Olegs, Olegs' business and social circles to the extreme distress of the Plaintiff and extreme fear for Plaintiff's personal safety and safety of Plaintiff's family.

69.     The Defendants' deprivation of Plaintiffs due process rights was intentional, malicious and knowingly accomplished for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress.

70.     Alternatively, the Defendants deprivation of Plaintiff's due process rights was done with reckless disregard of the grave probability that the Plaintiff would suffer emotional distress, knowing the Plaintiff would learn of the conduct.

71.     The Plaintiff suffered severe emotional distress and the Defendants' conduct was a substantial factor in causing severe emotional distress which to this day continues unabated.

72.     As the proximate result of the acts alleged above, Plaintiff suffered humiliation, mental anguish, emotional and physical distress, fear and anxiety and has been injured in mind, all to Plaintiff's damage which to this day continues unabated.

73.     The acts of Defendants, and each of them, as instrumentalities of the court, and as

alleged above, were willful, wanton, malicious, and oppressive, and justify the awarding of exemplary and punitive damages.

WHEREFORE, Plaintiff prays judgment as follows:

1. For general damages according to proof;

2. For lost earnings, past and future, according to proof;

3. For exemplary and punitive damages;

4. For costs of suit herein incurred; and

5. For such other and further relief as the court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated:  January 27, 2023                /s/ Nevin P. Miller
Nevin P. Miller
Attorney for Plaintiff